IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**THOMAS TERRY WILLIAMS, JR.**                                     **PLAINTIFF**

**V.**                                      **CIVIL ACTION NO. 3:20-cv-237-NBB-JMV**

**PANOLA COUNTY, MISSISSIPPI,**
**AND LYGUNNA BEAN**                                                   **DEFENDANTS**

## MEMORANDUM OPINION

This cause comes before the court upon the defendant Panola County, Mississippi's Motion for Summary Judgment as to Federal Claims and defendant Panola County and Lygunna Bean's Motion for Summary Judgment as to State Law Claims. Upon due consideration of the motions, responses, exhibits, and applicable authority, the court is ready to rule.

<u>Factual Background and Procedural Posture</u>

Defendant Panola County, Mississippi, hired plaintiff Terry Williams, a white male, in 2017 to manage and update its road sign maintenance program. Thereafter, Panola County also placed Williams in charge of spraying chemicals for the county. The county also employed a consultant, Bill Wigley, for spraying because Wigley is a licensed chemical applicator. Plaintiff Williams was a certified applicator who sometimes worked for profit with a personal lawn care business under Wigley's license. Wigley's employment with the county was terminated when the county determined it would have its other employees do the work Wigley was doing.

On Thursday, April 25, 2019, defendant Lygunna Bean, the county's road manager, gathered a number of Panola County road department employees for a meeting which included Williams and his supervisor, Bobby Jones. The purpose of the meeting was to discuss the spraying program and the county's new spray truck. It was revealed at this meeting that the new

truck was not calibrated, and Williams informed Bean that Wigley, who no longer worked for the county, would have to be involved to make certain that the truck was properly calibrated. Bean informed Williams that Wigley was no longer employed by the county and that Williams would be responsible for the spray program. Williams interrupted Bean to state, "I'm not going to spray without Bill [Wigley] because my license are [sic] on the line." No resolution of the matter was reached. The meeting ended, and Williams clocked out and left in his county vehicle.

Williams had already taken the next day off from work, Friday, April 26, 2019. That day, however, Bobby Jones called Williams, who did not answer but instead went to the County Administrator Kate Victor's office and asked if she would be a witness to his phone call with Jones. Williams then returned Jones' call. Jones directed Williams to return his county vehicle because it was needed for sign maintenance. Williams asked Jones what would happen if he did not return the truck to the road department, and Jones informed Williams that he would be fired. Defendant Bean documented this interaction between Jones and Williams in an incident report which is part of the record before the court.

Victor then contacted Cole Flint, the president of the Panola County Board of Supervisors, and relayed to Williams that, on Flint's advice, Williams should not return the truck because there could be some hostility between Williams and Jones. Instead, Panola County road department employees traveled to Williams' home, as directed by Victor and Flint, and retrieved the truck. Williams testified in deposition that he still believed he was employed by Panola County on this date but contradicts his own testimony later in the same deposition. [Doc. 56-1, p. 121-25]

It is uncontested that Bobby Jones, even though he was Williams' supervisor, did not have the authority to terminate Williams. It is likewise uncontested that defendant Bean could

2

have properly ratified Jones' attempted termination of Williams, and Williams would have been fired in accordance with county policy and procedure. Despite the plaintiff's argument to the contrary, however, there is no evidence in the record before this court that this action occurred, and the county, including County Administrator Victor in sworn testimony, maintains that it did not occur.

On Monday, April 29, 2019, the Panola County Board of Supervisors met and went into executive session to discuss these personnel matters. At the meeting, both Williams and Bean were allowed an opportunity to address the matter with the Board of Supervisors separately. Both men were then given the opportunity to address the Board in the presence of each other and respond to inquiries directed to them. The Board then "made a unanimous finding of fact that Terry Williams would continue to operate the spray truck and the sign truck and that any and all future concerns or grievances would be addressed pursuant to the dictates of the Panola County Employee Handbook which both Mr. Bean and Mr. Williams acknowledged." [Doc. 56-2, p. 2] This language is a direct quote from a document entitled "Order of the Board of Supervisors" reflected in the minutes of the Board's meeting.

After the Board meeting, Williams went to a doctor and received a work excuse which stated, "Please excuse from work 4-29-19 until 5-3-19." Williams testified that he provided this doctor's excuse because he was still employed with Panola County and needed an excuse from work. Again on May 3, 2019, Williams visited the same doctor and received another excuse which stated, "Patient excused from work for the next two weeks." Williams testified that he did not return to work with Panola County after the expiration of these doctor's excuses because he "took another job."

Panola County continued to pay Williams and maintain his insurance during the entire period of April 25, 2019, the day of the personnel incident, through May 20, 2019, thereby showing that it considered Williams an employee during this period. The county also paid out Williams' remaining comp time and sick and personal leave over the next few pay periods. It is uncontested that had Williams been terminated, his comp time and sick and personal leave would have been paid out in a lump sum.

Though Williams now asserts that A.D. Toliver, an African-American co-worker, took over his responsibilities after Williams' departure, the record reflects that Toliver simply continued his own duties. Williams was ultimately replaced by Robert Beavers, a white male.

In April 2020, Williams applied for unemployment benefits with the Mississippi Department of Employment Services ("MDES"). After a July 29, 2020 hearing, MDES ultimately determined that "the claimant [Williams] was not discharged but rather voluntarily left his employment." Williams did not appeal this determination but instead filed the present lawsuit on August 19, 2020.

In his First Amended Complaint, Williams alleges federal race discrimination claims, asserting that Panola County violated 42 U.S.C. § 1981, the Fourteenth Amendment, and Title VI, because the county terminated his employment, in part, because of his race. Williams also alleges state law claims against Panola County for discharge in violation of public policy and defamation. Finally, he brings a state law claim against defendant Lygunna Bean for malicious interference with employment.

Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

4

R. Civ. P. 56(a). On a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant makes such a showing, the burden then shifts to the non-movant to "go beyond the pleadings and . . . designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

When deciding a motion for summary judgment, the court must view the underlying facts in the "light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). As such, all reasonable inferences must be drawn in favor of the non-movant. *Id.* Before finding that no genuine issue for trial exists, the court must first be satisfied that no rational trier of fact could find for the non-movant. *Matsushita*, 475 U.S. at 587 (1986). "Summary judgment, although a useful device, must be employed cautiously because it is a final adjudication on the merits." *Jackson v. Cain*, 864 F.2d 1235, 1241 (5th Cir. 1989).

Analysis

As the defendants argue, Williams' First Amended Complaint reflects a number of deficiencies that are fatal to his claims. For instance, Williams' Section 1981 claim fails because Williams failed to plead Section 1983. While the Supreme Court did hold in *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346 (2014), that "no heightened pleading rule requires plaintiffs seeking damages for violations of constitutional rights to invoke § 1983 expressly in order to state a claim," and thus Williams' Fourteenth Amendment claim would survive his failure to plead Section 1983, the courts in this circuit have long held that "Section 1981 … does not provide a separate cause of action against local government entities." *Bradford v. Jackson Parish Policy*

5

*Jury*, 2019 U.S. Dist. LEXIS 75401, at *15 (citing *Oden v. Oktibbeha County*, 246 F.3d 458, 462-64 (5th Cir. 2001)). Accordingly, "plaintiffs must assert a cause of action against state actors under § 1983 to remedy violations of civil rights under § 1981." *Dunlap v. City of Fort Worth*, 2020 U.S. Dist. LEXIS 2619, at *7 (N.D. Tex. Jan. 8, 2020) (quoting *Oden*, 246 F.3d at 463). Because Williams failed to plead Section 1983 in his First Amended Complaint, his Section 1981 claim must be dismissed.

Though as a purely constitutional claim it survives Williams' failure to plead Section 1983, Williams' Fourteenth Amendment claim, as well as his Section 1981 claim, also fails because Williams properly failed to plead municipal liability. Williams bases his racial discrimination claims solely on the alleged actions of Lygunna Bean, a Panola County employee, asserting that Bean was a racist who would only hire black employees and that Bean engaged in race-based harassment against the plaintiff, such as writing him up for parking in the wrong parking spot. "[A] municipality … will only be held liable for § 1983 violations if a plaintiff can establish three elements: a policymaker; an official policy; and a violation of constitutional rights whose moving force is the policy or custom." *Dunlap*, 2020 U.S. Dist. LEXIS 2619, at *9 (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)). "[T]he unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." *Russell v. City of Tupelo*, 2021 U.S. Dist. LEXIS 112791, at *37 (N.D. Miss. June 16, 2021) (quoting *Webb v. Town of Saint Joseph*, 925 F.3d 209, 214 (5th Cir. 2019)).

First, Williams fails to identify a Panola County policy maker and points to no case law holding that a road manager such as Bean is a policy maker for a county. Second, Williams

6

wholly failed to identify a county policy that was the moving force behind his alleged discrimination. Third, though Williams does allege that Bean only *hired* black employees, Williams' claims stem from his alleged *firing*, not the county's hiring practices. Because Williams has failed to allege any official county policy, custom, or practice that cause the alleged discrimination against him, his First Amended Complaint fails to state a claim against the county for a constitutional violation.

Williams' Title VI claim must also be dismissed because Panola County cannot be held vicariously liable for the alleged discriminatory conduct of its employee and because Williams failed to show that an "appropriate person" had actual knowledge of the alleged discrimination and responded with deliberate indifference. "The courts have consistently concluded that there is no claim for vicarious liability under Title VI." *Vouchides v. Houston Cmty. College Sys.*, 2011 U.S. Dist. LEXIS 112609, at *17 (S.D. Tex. Sept. 30 2011). For liability to attach, the plaintiff must show that "an 'appropriate person' in the [county] – i.e., someone who could take corrective measures – had 'actual knowledge' of intentional discrimination yet responded with 'deliberate indifference.'" *Sneed v. Austin Indep. Sch. Dist.*, 2020 U.S. Dist. LEXIS 185897, at *27 (W.D. Tex. Sept. 11, 2020) (quoting *Bhombal v. Irving Indep. Sch. Dist.*, 809 F. App'x 233, 237 (5th Cir. 2020) (citing *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998))). "Where … liability rests on actual notice principles, however, the knowledge of the wrongdoer himself is not pertinent to the analysis." *Gebser*, 524 U.S. at 293. In the present case, Bean, the alleged wrongdoer, is the only person alleged to have knowledge of Bean's own alleged discriminatory animus and therefore, under the Title VI framework according to *Gebser*, cannot be an "appropriate person" who had actual knowledge of intentional discrimination and who responded with deliberate indifference. Accordingly, Williams' Title VI claim must fail.

7

These dispositive deficiencies in Williams' ability to state a claim for relief notwithstanding, the most notable deficiency in this case is revealed when Williams attempts to state a prima facie case of discrimination. The courts of this circuit have repeatedly held that "the familiar *McDonnell Douglas* burden shifting framework is applicable" to claims under Section 1981 and the Fourteenth Amendment. *Russell v. City of Tupelo*, 2021 U.S. Dist. LEXIS 112791, at *20-*21 (citing numerous cases in which courts have applied the Title VII framework to Section 1981 and Fourteenth Amendment claims). Further, the same standard is used for "individual actions brought under … Title VI and Title VII." *Bisong v. Univ. of Houston*, 493 F. Supp. 2d 96, 904 (S.D. Tex. 2007). Under *McDonnell Douglas*, Williams must show that he "(1) suffered an adverse employment action, (2) was qualified for the position at issue, (3) belongs to a protected class, and (4) either received less favorable treatment than similarly situated employees outside the protected class or was replaced by a person outside the protected class." *Russell*, 2021 U.S. Dist. LEXIS 112791, at *22; *see also*, *McCoy v. Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007).

Williams' prima facie case fails with the first element. The undisputed record before the court shows that Williams was not fired from his employment with Panola County. First, it is uncontested that Bobby Jones did not have the authority to fire Williams. Second, there is no evidence before the court that Lygunna Bean ratified Jones' unauthorized attempt to fire Williams. Third, the Panola County Board of Supervisors' order and minutes reflect explicitly and unequivocally that Williams was not fired. Fourth, Williams' own actions show he did not believe that he had been fired. Finally, Panola County continued to pay and provide insurance for Williams long after the date he alleges his employment was terminated, thereby showing that the county believed him to be an employee.

Williams' failure to satisfy the first prong of a prima facie case under *McDonnell Douglas* is dispositive, as are the pleading deficiencies addressed above, but the court also notes that Williams cannot show that he was replaced by a person outside his protected class, since he is a white male who was replaced by Robert Beavers, also a white male. In his deposition, Williams acknowledged the fact that he was replaced by Beavers, but now, in an apparent attempt to create a question of fact in order to survive summary judgment, he asserts that A.D. Toliver, an African-American male and co-worker, replaced him. The record does not support this assertion. The court finds that Williams' failure to satisfy this prong of a prima facie case further supports dismissal of his federal claims.

As a final note, the court acknowledges but rejects the plaintiff's efforts to argue a constructive discharge claim in response to the defendants' motions for summary judgment. Well into this litigation and outside the appropriate deadline, the plaintiff moved to file his Second Amended Complaint to, among other things, add a claim of constructive discharge. The magistrate judge denied the motion for a number of sound reasons. [Doc. 55] It is axiomatic that new claims cannot be added to a case in response to a motion for summary judgment, and the court will address the plaintiff's constructive discharge argument no further. *See Cutrera v. Bd. of Supervisors of Louisiana State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) (A "claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court.").

## Conclusion

Because Williams is unable to direct the court to evidence showing the existence of a genuine issue of material fact for trial, the court finds that Panola County's Motion for Summary Judgment as to Federal Claims is well taken and should be granted. The court declines to

exercise jurisdiction over the plaintiff's remaining state law claims, and those will be dismissed without prejudice. Accordingly, Panola County and Lygunna Bean's Motion for Summary Judgment as to State Law Claims will be denied as moot. A separate order in accordance with this opinion will issue this day.

    This 17th day of December, 2021.

                                            /s/ Neal Biggers
                                            NEAL B. BIGGERS, JR.
                                            UNITED STATES DISTRICT JUDGE